Filed 7/13/21  In re D.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  P.M.,  Defendant and Appellant. | E075694  (Super.Ct.No. J285821)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

The Law Office of Richard L. Knight and Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant P.M. (father) here challenges the juvenile court's jurisdictional findings and orders as to his daughter D.M. (child), contending that there is no substantial evidence to support them. We are not persuaded and therefore affirm.

## I. BACKGROUND

The child (born April 2018) was detained out of father's care by plaintiff and respondent San Bernardino County Children and Family Services (CFS) in July 2020. The child's mother, who is not party to this appeal, had taken the child to the emergency room, concerned about injuries she had sustained while in father's care.[1] The child was observed to have bruises on her shins and her thighs, as well as petechiae (burst small blood vessels) on one cheek. Father reported that the injuries resulted from the child falling off playground equipment at the park; he had walked to the car to retrieve snacks, leaving the child for a moment with the child's teenage half-sibling, when the fall happened. The half-sibling confirmed that the child had fallen from some playground equipment. A physician's assistant at the emergency room, however, told the social worker that the child's injuries did not appear to have been caused by such a fall.

The child was referred to the Children's Assessment Center for a forensic medical examination. The doctor who performed the examination observed not only the bruises on the child's legs, but also a bruise on her lower abdomen, all of which appeared to have been caused by "blunt force trauma." The doctor's preliminary opinion was that the

---

[1] Mother and father were never married and did not live together; the child primarily lived with mother, but visited with father regularly.

child's "numerous bruises" were "not consistent" with a fall from playground equipment. The history provided by father also did not account for the petechiae on the child's cheek. The injuries were, the doctor opined, "highly suspicious for physical abuse."

The child had previously been brought to CFS's attention in September 2019, also in relation to concerns that she was being physically abused by father. She had returned from a visit with father with bruises on her neck and nose. Father told an investigating social worker that the child had been "'choking on her mucus' and began to vomit," and the bruises occurred when he "'tried to help the child not choke on herself.'" That allegation of abuse was ultimately dismissed as "inconclusive because it could not be determined if [father's] explanation was consistent with the child's injuries."

In the dependency petition, CFS alleged that the child came within Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (e) (severe physical abuse of a child under five), and (j) (abuse of a sibling).[2] The subdivision (a), (b)(1), and (e) allegations all related to alleged physical abuse of the child by father.[3] The subdivision (j) allegation related to the circumstance that another half-sibling of the child (born September 2017) was already the subject of an ongoing

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

[3] One of the subdivision (b)(1) allegations was framed as mother's failure to protect the child from physical abuse by father, while the other allegations were based on physical abuse by father directly, or suffered by the child while in the care of father.

3

dependency proceeding arising in part out of "substance abuse" and "ongoing domestic violence" by father.[4]

At the jurisdiction and disposition stage, after a contested hearing, the juvenile court sustained the allegations under section 300, subdivisions (a), (b)(1), and (j) as to father, finding the subdivision (e) allegation not true and, on CFS's recommendation, dismissing the subdivision (b)(1) allegation as to mother. The court removed the child from father's care, placed her with mother, and closed the case with exit orders granting mother sole legal and physical custody and ordering father to have supervised visitation.

## II. DISCUSSION

The only disputed issue in this appeal is whether the juvenile court's jurisdictional findings are supported by substantial evidence.[5] We find that they are.

The burden of proof for jurisdictional findings is preponderance of the evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) "'In reviewing the jurisdictional findings . . . we look to see if substantial evidence, contradicted or

---

[4] This court has previously ruled on a writ petition arising from that half-sibling's case; we denied father's petition challenging the juvenile court's order terminating his reunification services and setting a section 366.26 hearing as to the half-sibling. (*P.M. v. Superior Court* (Oct. 13, 2020, E075420) [nonpub. opn.].) The jurisdictional matters at issue in this appeal were adjudicated in the same hearing as the matters regarding the half-sibling at issue in the earlier writ proceeding.

[5] The parties both assert in briefing that it is appropriate for us to consider the merits of father's arguments regarding the jurisdictional findings even though the juvenile court has closed the case and issued exit orders. We agree. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489 [considering appeal on the merits "in an abundance of caution," even though appellant's concern about "the possibility of prejudice in subsequent family law proceedings" was "highly speculative"].)

4

uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*In re R.T.* (2017) 3 Cal.5th 622, 633.) "Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.) The appellant bears the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Father's arguments rest primarily on the notion that the medical opinions in the record, concluding that the child's injuries were nonaccidental, do not constitute evidence, but only speculation. Not so. The juvenile court was entitled to rely on the opinions of the doctor who conducted the child's forensic medical examination and the physician's assistant who treated the child in the emergency room that the injuries suffered by the child appeared to be nonaccidental. (See, e.g., *In re A.S.* (2011) 202 Cal.App.4th 237, 245 [citing such expert testimony as basis for rejecting substantial evidence challenge to jurisdictional findings], disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

Father makes much of his testimony and that of the child's teenage half-sibling that the child fell from playground equipment. But the circumstance that some evidence

5

arguably points to a different conclusion than the one reached by the experts is immaterial in the present procedural posture. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 53.) The juvenile court was free to conclude, particularly in light of the expert opinions in the record, that the injuries at issue were not caused by that accidental fall, even assuming both father and half-sibling were telling the truth about the fall occurring. (*In re R.T.*, *supra*, 3 Cal.5th at p. 633; *In re Casey D.*, *supra*, at p. 53.)

Father proposes that the medical expert opinions were inadequate because the doctor and physician's assistant "had only a little bit of the evidence" and "didn't hear the testimony by [the child's teenage half-sibling] because they weren't at court." He argues that their conclusions, therefore, were not "based 'in light of the whole record.'" To say that this line of argument is without merit is something of an understatement. There is no authority in support of the proposition that a medical expert's opinion regarding a child's injuries must take into account all testimony presented at trial, rather than be derived primarily (or even exclusively) from an examination of the child. The language father quotes is cherry picked from the following sentence: "'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.) In context, this language does not support father's application of it to the medical opinions, rather than to the trial court's ruling.

We find that the juvenile court reasonably concluded, in light of the whole record, that it was more likely than not that father physically abused the child, and that the child

therefore came within section 300, subdivisions (a) and (b)(1), given (1) the evidence that the child was injured while in father's care; (2) the circumstance that father's only explanation for the child's injuries was inconsistent with observations of the injuries by medical professionals; (3) the medical professionals' opinions that the child's injuries appeared to be nonaccidental; and (4) the lack of any indication in the record that some other person might have injured the child without father knowing about it. Father's arguments regarding the sufficiency of the evidence relating to the juvenile court's section 300, subdivision (a) and (b)(1) findings therefore fail, and we need not consider the parties' arguments relating to subdivision (j). (See *In re I.J.* (2013) 56 Cal.4th 766, 773-774.)

## III.  DISPOSITION

The challenged findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

McKINSTER _____
Acting P. J.

FIELDS _____
J.

7